UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                            )
UNITED STATES OF AMERICA                    )
                                            )
        v.                                  )   CRIMINAL NO. 06-10350-WGY
                                            )
CHARLES BRADSHAW LINCOLN                    )
_____)

### UNITED STATES' TRIAL MEMORANDUM

The United States of America, by its undersigned counsel, submits this memorandum in order to advise the Court and defense counsel regarding anticipated evidence.

### OFFENSE CHARGED

The Indictment charges Charles Lincoln two counts of Mail Fraud (18 U.S.C. § 1341), one of which incorporates the "honest services" provision of 18 U.S.C. § 1346.

### OVERVIEW OF FACTS

Until January 2004, Lincoln was employed by the Brockton Police Department, where he had worked for roughly 32 years, reaching the rank of Lieutenant. During the last three years of his employment in Brockton, Lincoln was assigned to the night shift (midnight to 8 am). During that time Lincoln held a second full-time position, working the day shift, as an employee of the Plymouth County Sheriff's Department, where he was Director of Security at the Plymouth County Jail. By holding both jobs (with a combined annual salary of roughly $177,000),[1]

---

[1] Public-employee pensions in Massachusetts are calculated on a "high-three" basis, whereby retirees' benefits are set as a percentage of the employees' annual salary during their three highest-paid years.

1

Lincoln's boosted his retirement pension by approximately $50,000 per year, for life, as compared to the pension he would have received had he simply retired from the Brockton Police Department.

The gist of the fraud charge in the indictment is that Lincoln did not actually <u>work</u> both jobs. While Lincoln does appear to have worked at his new job, a political appointment on the staff of the Plymouth County Sheriff, his performance of his duties at the Brockton Police Department was a sham. By sneaking home to sleep during his shift, and by falsely claiming sickness, Lincoln performed only a small fraction of the duties associated with his position as a police Lieutenant and, in many instances, officer-in-charge. Between vacation time, personal days, compensatory time and sick days, Lincoln only worked at the Brockton PD about 100 days per year during the three years before his retirement and, during the days that he worked, engaged in a pattern of sneaking home to sleep.

While Lincoln was entitled to his vacation time, personal days and comp time, his use of sick leave, in particular, was laced with fraud. The evidence on this point is largely circumstantial. In addition to anecdotal information such as the lack of any significant medical complaints to colleagues and the absence of any medical treatment history commensurate with Lincoln's use of sick leave, the most telling evidence lies in the <u>pattern</u> of Lincoln's sick leave usage.

In particular, the United States anticipates calling the jury's attention to a comparison of Lincoln's usage of sick leave in Brockton and Plymouth. During the three years that Lincoln held the two jobs, he used 222 sick days in Brockton and approximately 29 sick days in Plymouth. For purposes of his Brockton job, Lincoln took 30 sick days in 2001, 85 in 2002 and

106 in 2004. (During the previous 5 years, Lincoln had used a total of 51 sick days). Out of Lincoln's 222 sick-leave days in Brockton, on 148 of those days he worked a full shift in Plymouth and on 8 of those days he not only worked a full shift in Plymouth, but extra hours, as well.

Lincoln plainly knew and intended that by sleeping on the job and using sick leave to create the appearance that he was actually <u>working</u> the two jobs for which he was being paid, he could jack up his pension to astronomical heights. The indictment includes two counts. The first count charges straight mail fraud, based on Lincoln's use of false pretenses (<u>i.e.</u> in claiming to work two full-time jobs) to obtain money (namely, his inflated pension). The second charges "honest services" mail fraud, based on Lincoln's depriving Brockton of his honest services as a police officer.

ELEMENTS OF THE OFFENSES

1.   <u>The Statute</u>

Title 18, United States Code, Section 1341 provides in pertinent part:
Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, . . . for the purpose of executing such scheme or artifice or attempting so to do, places in an y post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service . . .. or knowingly causes to be delivered by mail . . . according to the direction thereon . . . any such matter or thing, shall be [guilty of an offense].

Title 18, United States Code, Section 1346 provides:

For the purposes of this chapter, the term "scheme or artifice to defraud" includes a scheme or artifice to deprive another of the intangible right of honest services.

2.   <u>Elements</u>

To sustain a mail fraud charge based upon a "scheme to obtain money or property by means of false or fraudulent pretenses," the United States must prove the following elements:

    (1)    That there was a scheme, substantially as charged in the indictment, to defraud or to obtain money or property by means of false or fraudulent pretenses, representations, or promises,

    (2)    That such scheme or such false or fraudulent pretenses, representations or promises were material;

    (3)    That the defendant knowingly and willfully participated in that scheme with the intent to defraud; and

    (4)    That the defendant used, or caused the use of, the mails in furtherance of the scheme.

Adapted from Pattern Jury Instructions of the First Circuit, Criminal, Instruction No. 4.13 (1998); Neder v. United States, 527 U.S. 1, 25 (1999) ("[M]ateriality of falsehood is an element of the federal mail fraud, wire fraud, and bank fraud statutes."); United States v. Blastos, 258 F.3d 25, 29 (1st Cir. 2001).

For a mail fraud charge based upon an "honest services" theory, the elements are as follows:

    (1)    That there was a scheme, substantially as charged in the indictment, to deprive another of the intangible right of honest services;

    (2)    That the scheme involved a deceit as to a material matter;

    (3)    That the defendant knowingly and willfully participated in that scheme with the intent to deprive the public of his honest services and with the intent to deceive the public; and

    (4)    That the defendant used, or caused the use of, the mails in furtherance of the scheme.

Id.

ANTICIPATED EVIDENCE

The United States anticipates calling witnesses in the following categories:

A.    Brockton City Officials, and Brockton Police Officers

Former officials of the City of Brockton are expected to describe the terms and conditions of Lincoln's employment, including the provisions of the applicable union contract with respect to pension accrual, the timing and circumstances of Lincoln's retirement planning (before he obtained his appointment in Plymouth, Lincoln had set a retirement date roughly a year earlier than the date on which he finally retired), and the personnel issues associated with Lincoln's decision to hold a second full-time job.

Brockton Police Department employees will describe the record-keeping procedures and practices of the department and will identify the records reflecting the work hours for which Lincoln was paid, as well as the records showing his use of sick leave.

Lincoln's former colleagues in the Brockton Police Department will describe Lincoln's work-habits and practices, and will describe a private reprimand that Lincoln received for sneaking home to sleep during his shift.

B.    Officials of the Plymouth County Sheriff's Office

Officials of the Plymouth County Sheriff's Office will testify regarding Lincoln's service as Director of Security for the Plymouth County House of Correction.

Employees of the Sheriff's Office will describe the recordkeeping practices of that organization and will identify records reflecting Lincoln's reported attendance and his credit for "time due" (in effect "comp time" allowed for reported "overtime" work).

### C. Summary Witness

Diane Volpe, an investigator employed by the Office of the Inspector General for the Commonwealth of Massachusetts, will identify and describe a summary chart designed to allow a side-by-side comparison of Lincoln's reported work hours, and use of sick leave, in Brockton and Plymouth.

### D. Retirement Officials

Officials of the Brockton Retirement Board, the Plymouth County Retirement Association and the Massachusetts Public Employee Retirement Administration Commission ("PERAC"), will describe the rules and computations by which Lincoln's pension was computed, and the actuarial procedures followed to pro-rate among the affected retirement funds the extraordinary expenses associated with Lincoln's inflated pension.

## II. Exhibits

The United States will offer documentary evidence, which falls into the following rough categories:

1. Brockton Police Department records reflecting Lincoln's reported work hours and sick leave usage.

2. Plymouth County Sheriff's Department records reflecting Lincoln's reported work hours and sick leave usage.

3. Summary Charts synthesizing records of Lincoln's work hours and sick leave usage.

4. Personnel and retirement board records reflecting Lincoln's reported earnings for purposes of retirement, together with correspondence relating to Lincoln's retirement.

5.      Medical records reflecting Lincoln's treatment history during the period in question.

## ANTICIPATED EVIDENTIARY ISSUES

1.      Expert Testimony

In light of the Court's practice of submitting guidelines issues to the jury, on an advisory basis, the United States has notified the defendant of its intention – in the event that defendant does not waive jury consideration of the issue – to submit expert testimony regarding the amount of loss associated with the charged fraud.  Specifically, the United States anticipates that an actuary employed by PERAC will testify to the approximate present value of the income stream associated with the amount by which Lincoln's pension was increased as a result of his holding two jobs during the three year period prior to his retirement.

2.      Summary Evidence To Be Offered Pursuant to Fed. R. Evid. 1006

As noted above, the United States anticipates offering in evidence summary charts that permit a side-by-side comparison of defendant's reported work hours and sick leave usage in Brockton and Plymouth.  The primary chart has been disclosed to the defense and has been revised to meet various concerns raised by the defense.  It is the United States intention to offer in evidence the data underlying the summary chart, in the form of print-outs from the computerized personnel records of the Brockton Police Department and the Plymouth County Sheriff's Department.  Certain corroborating items, such as roll-call books from the Brockton Police Department, will not be offered in evidence.  Rather, in keeping with the dictates of Rule 1006, these have been made available for inspection and copying and will be available in the Courtroom.

The United States notes that the First Circuit has expressly approved of this procedure, under Rule 1006, whereby the jury is allowed the benefit of a summary chart, while still permitting them direct access to the underlying data:

> [W]hile in most cases a Rule 1006 chart will be the *only* evidence the fact finder will examine concerning a voluminous set of documents . . . in other instances the summary may be admitted *in addition to* the underlying documents to provide the jury with easier access to the relevant information.

United States v. Milkiewicz, 470 F.3d 390, 396 -397 (1st Cir. 2006) (citations omitted).

### 3.   Limine Issues

As set forth in the the United States' motion in limine, it appears that the defendant intends to offer evidence as to a variety of matters that are, at best, collateral to the issues at bar and that carry considerable risk of confusion, unfair prejudice and waste of time.  These include payroll records of other police officers, records of police incidents in which the defendant was involved (including incidents outside the relevant period), records reflecting defendant's attendance at meetings at the Plymouth County House of Corrections after the relevant period, and records reflecting the illnesses or deaths of relatives.

### 4.   Guideline Issues

In accordance with the Court's directions, the United States, by letter dated December 22, 2006, notified defendant of the United States's position with respect to the pertinent provisions of the United States Sentencing Guidelines (so that defendant could notify the Court whether he wished to have the jury consider the applicability of any adjustments).  Based on the information currently known to counsel, the United States's position is as follows:

  §2B1.1  Fraud Offenses
    (a)  Base Offense Level (statutory max. 20 years or more) . . . . . . . . . . . . . . . 7
    (b)  Specific Offense Characteristics:
    (1)  If the loss exceeded $5,000, increase the offense level as follows
      (G)  more than $400,000[2] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

  §3B1.3  Abuse of Position of Trust . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

                    Respectfully submitted,

                    MICHAEL J. SULLIVAN
                    United States Attorney
dated: June 1, 2007
                By: */s/ Paul G. Levenson*
                    PAUL G. LEVENSON
                    EUGENIA M. CARRIS
                    Assistant U.S. Attorneys
                    John Joseph Moakley United States Courthouse
                    1 Courthouse Way, Suite 9200
                    Boston, MA 02210
                    (617) 748-3147

## CERTIFICATE OF SERVICE

  I hereby certify that this document, filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and that paper copies will be sent to those indicated as non registered participants on this date.

dated: June 1, 2007
                */s/ Paul G. Levenson*
                PAUL G. LEVENSON

---

[2]  The United States's original letter noted a possible loss figure in excess of $1,000,000. As recently discussed with defendant's counsel, that figure has been revised downward in light of the anticipated testimony of a PERAC actuary regarding the present value of Lincoln's inflated pension benefits.